JUDGE CAPRONI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

15 CV 03236

_____X     Case No.

ALLAN ROTHSTEIN

      Plaintiff,

v.

                                  **COMPLAINT AND JURY DEMAND**

CHRISTOPHER MAHNE and
MAZ TECHNOLOGIES, INC.,

      Defendants.

_____X

RECEIVED

APR 24 2015

U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT

    Plaintiff, Allan Rothstein ("Rothstein") hereby sues Defendants Christopher Mahne ("Mahne") and MAZ Technologies, Inc. ("MAZ"), and alleges:

## INTRODUCTION

    1.     This is an action against Defendants for breach of contract.  Plaintiff Rothstein entered into a contract with Defendants to perform work related to the sale of Defendants' patent portfolio.  As compensation for Rothstein's services, the contract requires the Defendants to pay Rothstein ten percent (10%) of the proceeds received from the sale.  Defendants have failed to pay these funds to Rothstein as required by the contract, and have willfully misappropriated the money for their own benefit.  Accordingly, by this action, Rothstein seeks damages for Defendants' wrongful and unlawful conduct.

1

## PARTIES

2.    Plaintiff Rothstein is an individual and a citizen of Connecticut.  Rothstein is an entrepreneur and investor who conducts business primarily in New York City.  Rothstein maintains an office at 129 West 29th Street, 9th Floor, New York, NY 10001.

3.    Defendant Mahne is an individual and a citizen of Florida or Nevada.  Mahne is the President and Chairman of MAZ.  Mahne transacts business in New York, including negotiation of the transaction at issue in this case.

4.    Defendant MAZ is a corporation incorporated in Delaware with its principal place of business at 3422 Old Capitol Trail, Suite 700, Wilmington, DE 19808.  MAZ transacts business in New York, including negotiation of the transaction at issue in this case.

## JURISDICTION AND VENUE

5.    Plaintiff brings claims for breach of contract. The claims at issue involve damages in excess of $75,000.  The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332.

6.    Venue is proper in this District under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

**Background**

7.    In 2012, Defendant Mahne contacted Plaintiff Rothstein for help in finding a way to make money on a portfolio of patents.  The patent portfolio was owned by Mahne indirectly, through MAZ, a company that he owns and controls.

8.    The patent portfolio included a number of patents related to computer data-security technology.

2

9.      Rothstein agreed to help Mahne by finding potential buyers or other business partners to assist Mahne in making money on the portfolio.  In return for his assistance, Mahne promised Rothstein a portion of the proceeds of any sale or other business transaction involving the portfolio.

**The Empire-MAZ Contract**

10.      Taking advantage of his extensive business contacts in New York City, Rothstein soon made a connection with Daniel Mitry ("Mitry"), one of the principal owners of Empire IP LLC ("Empire"), a Texas Limited Liability Company that specializes in monetizing patent portfolios.

11.      Rothstein engaged Mitry in a series of negotiations in New York City for the purchase of the Defendants' patent portfolio.  As a result of Rothstein's work, the negotiations culminated in a contract, dated October 18, 2012, between Empire and MAZ for the sale of the patent portfolio.  A copy of the contract is attached hereto as **EXHIBIT 1**.

12.      The contract between Empire and MAZ contemplates that Empire will take action to recover money for infringement of the patent portfolio by third-parties.  *See* Exhibit 1 at Section 1.1.  The contract also calls for a percentage of any proceeds obtained by Empire to be paid to MAZ as consideration for the sale.  *See Id.* at Section 2.1.

13.      The contract between MAZ and Empire was negotiated substantially in New York City.

**Rothstein's Contract With Defendants**

14.      During the course of the negotiations of the contract between Empire and MAZ, Rothstein also negotiated with both Mitry and Mahne to receive a percentage of the funds to be obtained by Empire, as compensation for his work in facilitating the agreement.  Defendants

3

Mahne and MAZ both agreed that Rothstein would be paid ten percent (10%) of any money payable to them under the contract with Empire.

15.     On October 25, 2012, the contract between Rothstein and the Defendants was memorialized in a written letter agreement.   A copy of the agreement is attached hereto as **EXHIBIT 2**.

16.     The contract between Rothstein and Defendants requires the Defendants to pay Rothstein ten percent (10%) of any and all proceeds received by Defendants in connection with the contract between MAZ and Empire.

17.     The contract states, in relevant part, that:

> In return for the consulting services that you [Rothstein] have rendered to date, MAZ Technologies and I [Mahne] have agreed to pay you a fee equal to ten percent (10%) of any and all proceeds that MAZ Technologies and I receive in connection with the Agreement. The fees will be payable within ten (10) days of my receipt of Net Proceeds as defined in the Agreement.

*See* Exhibit 2.

### The Patent Litigation

18.     On or about February 13, 2013, Empire assigned its rights in the patent portfolio to MAZ Encryption Technologies LLC ("MAZ Encryption"), a subsidiary or affiliate of Empire created for the specific purpose of pursuing patent litigation related to the patent portfolio Empire purchased from Defendants.

19.     Beginning in February, 2013, MAZ Encryption filed a series of lawsuits against major computer, software, and electronics companies for patent infringement.  The defendants in those suits included Apple, Samsung, Sony, Intel, Dell, Hewlett-Packard, Oracle, and others.

20.     Beginning in May, 2014, and continuing through August and September, 2014, approximately twelve (12) of the patent infringement suits commenced by MAZ Encryption

were dismissed pursuant to joint motion or stipulation. On information and belief, these cases were all settled, with payments of money from the defendants to MAZ Encryption or Empire. Among the defendants whose cases appear to have settled are Apple, Samsung, Sony, Intel, Dell, Hewlett-Packard, and Oracle. On information and belief, there may be other, similar lawsuits that have been settled by affiliates or assignees of Empire.

21. On information and belief, Empire or its affiliates, such as MAZ Encryption, have paid a portion of the proceeds of these settlements to Defendants pursuant to the contract between MAZ and Empire. This contention will likely have evidentiary support after a reasonable opportunity for discovery.

### Defendants' Breach Of Contract And Conversion Of Money

22. Defendants' contract with Rothstein requires them to pay ten percent (10%) of any funds received from Empire, within ten (10) days. *See* Exhibit 2. Despite the fact that Empire and its affiliates have settled significant patent litigation within the past 12 months, and paid a percentage of those proceeds to Defendants, Defendants have not paid Rothstein anything at all.

23. Defendants have failed to pay the required ten percent (10%) of funds received from Empire to Rothstein, as required by the contract between Rothstein and Defendants.

24. Despite knowing that Rothstein was entitled to full payment of his percentage within ten (10) days of receiving any funds from Empire, Defendants have willfully misappropriated the money for their own benefit, in breach of the express terms of the contract and the implied covenant of good faith and fair dealing.

25. Prior to filing this action, Rothstein made several attempts to communicate with Defendant Mahne regarding the contract payments, but received no meaningful response.

## COUNT I
## BREACH OF CONTRACT
### [Against all Defendants]

26.     A valid and binding contract exists between Rothstein and Defendants.   *See* Exhibit 2.

27.     Pursuant to the contract, in return for services provided by Rothstein, Defendants agreed to pay Rothstein a fee equal to ten percent (10%) of any funds received from Empire in connection with the sale of Defendants' patent portfolio.

28.     Rothstein performed the services specified in the contract.

29.     On information and belief, Defendants have received payments from Empire pursuant to the contract between Defendants and Empire.

30.     Defendants have breached their contract with Rothstein by failing to pay Rothstein the required ten percent (10%) of the money within ten (10) days of receipt from Empire.

31.     Rothstein has suffered damages as a direct result of Defendants' breach of contract. Rothstein has been deprived of the money he is owed, including interest for the period from the date of the breach. Further, Rothstein has incurred costs and attorneys' fees in bringing this action, as a direct result of Defendants' breach.

WHEREFORE, Plaintiff seeks compensatory damages, the costs of suit for Defendants' breach of contract, including attorneys' fees, and any such other, further relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable.

DATED: April 22, 2015                    Respectfully submitted,


                                         KOZYAK TROPIN & THROCKMORTON, LLP
                                         Counsel for Plaintiffs
                                         2525 Ponce de Leon Blvd., 9th Floor
                                         Miami, Florida 33134
                                         Telephone: (305) 372-1800
                                         Facsimile: (305) 372-3508
                                         By: /s/
                                         Chauncey D. Cole IV, Esq.
                                         SDNY Bar No. CC4178
                                         cdc@kttlaw.com


## CERTIFICATE OF SERVICE

    I **HEREBY CERTIFY** that a copy of the foregoing was filed with the Clerk of Court
and sent via the Court's electronic filing system (ECF) this 22nd day of April, 2015.

                                 By:  /s/
                                      Chauncey D. Cole IV


## SERVICE LIST

# EXHIBIT 1



Empire IP
Patent Licensing & Monetization Experts

### SALE AND TRANSFER AGREEMENT

This Agreement (the "Agreement") is entered into by and between MAZ Technologies, Inc., a corporation having a principal place of business 3422 Old Capital Trail, Suite 700, Wilmington, DE 19808-6195 ("Patent Owner") and Empire IP LLC, a Texas Limited Liability Company, having a place of business at 815 Brazos Street, Suite 500, Austin, Texas 78701 ("Empire IP") (collectively referred to herein as the "Parties" and individually as "Party"). The effective date of this Agreement shall be the date on which the last Party executes this Agreement below (the "Effective Date").

### BACKGROUND

WHEREAS, Patent Owner is the sole and exclusive owner of U.S. Patent Nos. 6,185,681; 6,981,141; 7,096,358; 7,865,728 and U.S. Patent Application No. 12/957,479, and all patents, patent applications, foreign patents, foreign patent applications, continuations, continuations-in-part, divisionals, extensions, renewals, reissues and re-examinations related to all inventions thereof, (collectively referred to as the "Patents" and identified on Exhibit A hereto); and

WHEREAS, Patent Owner is willing to assign and transfer all rights in the Patents to Empire IP and Empire IP in turn, desires to acquire all substantial rights in and to the Patents.

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein and for other good and valuable consideration, Patent Owner and Empire IP agree as follows:

1. **SALE AND TRANSFER**

   1.1. <u>Assignment</u>. Patent Owner agrees to assign, transfer and convey all right, title and interest in and to the Patents to Empire IP including the right to sue for and collect past, present and future damages and to seek and obtain injunctive or any other relief for infringement of the Patents. Except as expressly set forth in this Agreement, Patent Owner retains no rights in or to the Patents, including without limitation, the right to sue for and collect past, present and future damages or to seek and obtain injunctive or any other relief for infringement of the Patents. Upon execution of the Agreement, Patent Owner shall execute and deliver to Empire IP a separate Assignment which is attached hereto as Exhibit B, and such other documents as Empire IP shall reasonably require to comply with the terms of this Agreement.

2. **CONSIDERATION**

   2.1. <u>Sale Payments</u>. In consideration of the rights assigned to Empire IP hereunder, Patent Owner's share of the Net Proceeds (as defined below) shall be equal to sixty two and one half percent (62.5%) of Net Proceeds. Empire IP's share of the Net Proceeds shall be equal to thirty seven and one half percent (37.5%) of Net Proceeds.

      "Net Proceeds" means Total Recoveries less the Empire IP Costs.

      "Total Recoveries" means all amounts actually received by Empire IP after execution of the Agreement from the licensing, enforcement or sale of the Patents.

      "Empire IP Costs" means any and all reasonable and direct costs and expenses solely incurred in connection with prosecuting, licensing, enforcing, litigating or defending the Patents, including claims brought against the Patent Owner in connection therewith as set

1

forth in Section 2.5. For the avoidance of doubt the following shall not be treated as Empire IP Costs under this Agreement: (i) time billed by the employees, owners or members of Empire IP; and (ii) bonuses and/or salaries paid to the employees, owners or members of Empire IP; and (iii) overhead or fixed costs of Empire IP that are not related directly to the enforcement and litigation of the Patents. On the fifteenth day of each month following the month during which Empire IP incurs and pays Empire IP Costs, Empire IP shall provide Patent Owner with copies of records sufficient to reflect the Empire IP Costs.

Application of Total Recoveries. Total Recoveries shall be applied in the following order of priority: first to Empire IP in an amount equal to the Empire IP Costs, then to Empire IP and Patent Owner in proportion to their respective shares of the Net Proceeds. All taxes shall be the financial responsibility of the Party obligated to pay such taxes.

2.2. Reporting/Payments. All amounts payable to Patent Owner with respect to Net Proceeds, to the extent any such Net Proceeds are available, shall be due and payable on the first business day of each calendar month.

2.3. Patent Owner Availability. Patent Owner will be reasonably available to assist Empire IP on matters relating to the Patents and Empire IP will pay for Patent Owner's reasonable out of pocket expenses incurred at the request of Empire IP; all of such expenses will be treated as Empire IP Costs.

2.4. No Liability for Empire IP Costs. The parties expressly agree that in no event shall Patent Owner be liable for any Empire IP costs, and Patent Owner does not assume any liability or obligation of any kind, nature or character, however described, of Empire IP.

2.5. Indemnification. Subject to Patent Owner's representations and warranties as set forth in Section 3, in the event Patent Owner is named as a party by another party to an enforcement action brought by Empire IP, Empire IP shall defend and indemnify Patent Owner against all liabilities (including costs and expenses incurred) for: (i) proving infringement and defending validity and title of the Patents; and (ii) any claim that is brought against both Patent Owner and Empire IP arising solely from an enforcement action brought by Empire IP, provided that Empire IP will provide legal counsel of its choosing. In the event Patent Owner elects to be represented by counsel other than counsel provided by Empire IP, Patent Owner shall be responsible for paying all of its own fees and costs related to such representation. Empire IP will not defend or indemnify Patent Owner other than as explicitly set forth in Section 2.5.

2.6. Third Party Beneficiaries. Empire IP and Patent Owner intend that this Agreement shall not benefit or create any right or cause of action in or on behalf of any person other than Empire IP and Patent Owner.

3. REPRESENTATIONS AND WARRANTIES

3.1. Patent Owner's Representations and Warranties. Patent Owner represents and warrants to Empire IP that, as of the Effective Date hereof:

3.1.1. Patent Owner is the sole owner of the Patents and has all right, title and interest arising from such ownership, free and clear of any liens, security interests, or other encumbrances or restrictions, and Patent Owner has all requisite legal and corporate power and authority to enter into this Agreement; and

2

  3.1.2. Other than to Microsoft Corporation, there has been no assignment or license of any rights or interest in the Patents to any third party; and the Patents are not subject to a covenant not to sue.

4. **RECORDS AND FEES**

 4.1. <u>Records</u>. Empire IP shall keep complete and proper records of the Total Recoveries, Empire IP Costs, and Net Proceeds.  Patent Owner may request copies of such records and Empire IP shall provide Patent Owner copies of such records within thirty (30) days of receiving Patent Owner's request for such records.  Patent Owner will have access to settlement agreements to the extent Patent Owner is either: (i) a party to the settlement agreement; or (ii) the settlement agreement does not prohibit disclosure of the agreement to Patent Owner.

 4.2. <u>Maintenance Fees</u>. For so long as this Agreement is in effect, Empire IP shall pay all U.S. and foreign maintenance fees with respect to the Patents.

 4.3. <u>Patent Prosecution</u>. During the term of the Agreement, Empire IP shall assume sole control of, and shall have absolute discretion with respect to, any and all activities, matters and proceedings before the USPTO and foreign patent offices relating to the Patents, and the costs, fees and expenses paid by Empire IP in connection therewith shall be treated as Empire IP Costs.

5. **ENFORCEMENT OF PATENT RIGHTS AND COOPERATION**

 5.1. <u>Good Faith</u>. Empire IP will use its good faith efforts to pursue licensing and enforcement of the Patents at its expense. Empire IP will attempt to negotiate licenses with companies that Empire IP believes may be infringing the Patents.  Notwithstanding anything to the contrary, Empire IP may at any time elect not to pursue licensing or enforcement of the Patents if Empire IP determines, in its sole discretion, that any such pursuit would be commercially unreasonable or otherwise unlawful or illegal.  To the extent any potential conflicts of interest arise between Empire IP's efforts to purse licensing and enforcement of the Patents and Empire IP's licensing and enforcement of other patents not described in this Agreement, Empire IP agrees to disclose such potential conflicts and refrain from compromising the interests of Patent Owner.

 5.2. <u>Enforcement Litigation</u>. Empire IP may, in its sole judgment, decide to institute enforcement actions against any or all of the companies that Empire IP believes are infringing the Patents.

 5.3. <u>Cooperation</u>. The Parties agree to fully cooperate with each other in any litigation that is brought and any other matters in connection with licensing, enforcing or defending the Patents.

6. **TERMINATION**

 6.1. <u>Term</u>. Unless earlier terminated as provided for in this Agreement, all grants, obligations and provisions recited in this Agreement and relating to the Patents shall continue in full force and effect until the conclusion of Empire IP's pursuit of licensing and enforcement efforts.

 6.2. <u>Reasonable Pursuit</u>. In the event Empire IP fails to reasonably pursue licensing or enforcement of the Patents:  (i) within twelve (12) months of the Effective Date; or (ii) for any consecutive twenty-four (24) month period, Patent Owner may terminate this Agreement upon sending written notice to Empire IP.  Upon receipt of said written notice, Empire IP will within five (5) days execute a written instrument for the return of the Patents to Patent Owner.  For the avoidance of doubt, reasonable pursuit constitutes pursuit of licensing or enforcement of the

Patents by either: (i) a lawsuit against one or more companies that Empire IP reasonably believes are infringing the Patents; or (ii) substantive negotiations with one or more companies regarding a license to the Patents.

6.3. <u>Cessation of Operations</u>. Provided the Patents have not been sold, in the event that Empire IP (or any relevant assignee of the Patents pursuant to <u>Section 7.2</u>) ceases to operate due to: (i) Empire IP filing for protection under any bankruptcy law; or (ii) the incapacitation of all of the owners or all of the members of Empire IP, Patent Owner may terminate this Agreement upon sending written notice to Empire IP. Upon receipt of said written notice, Empire IP will within five (5) days execute a written instrument for the return of the Patents to Patent Owner.

6.4. <u>Material Breach</u>. Either Party may terminate this Agreement upon written notice to the other if the other Party breaches any material representation, warranty or agreement in this Agreement and fails to cure such breach within ninety (90) days of receipt of such written notice detailing the alleged breach.

6.5. <u>Commercially Unreasonable</u>. Empire IP may terminate this Agreement, upon sending written notice to Patent Owner, if Empire IP determines, in its sole judgment, that licensing or enforcement of the Patents is not commercially reasonable or practicable.

6.6. <u>Final Ruling</u>. In the event of any dispute as to whether a Party has breached this Agreement pursuant to <u>Section 6.4</u> above or whether the breach has been cured, the matter shall be submitted to litigation pursuant to <u>Section 8</u> hereof, and there shall be no termination of the licenses or rights under this Agreement unless and until there is a final ruling that there has been an uncured breach, as provided herein.

6.7. <u>Patent Owner Payments after Termination</u>. Any termination of this Agreement shall not relieve Empire IP of liability for any payments due to Patent Owner accrued and collected prior to the effective date of such termination.

6.8. <u>Empire IP Payments after Termination</u>. In the event of any termination of this Agreement, after payment of any monies due Patent Owner, Empire IP shall be entitled to retain or receive the portion of Total Recoveries that it would be entitled to retain or receive if this Agreement were in effect, which (i) accrued or was received prior to the termination date; (ii) accrues or is received after the termination date as a result of any settlement, license agreement or other agreement or transaction that was negotiated, made or occurred prior to the termination date; or (iii) resulted from any lawsuit or negotiations that were pending at or prior to the occurrence of such termination.

7. **ASSIGNMENT**

7.1. <u>Patent Owner Assignment/Successors</u>. Patent Owner may transfer or assign its interest in this Agreement provided that the transferee or assignee agrees to be bound by the terms of this Agreement in writing.

7.2. <u>Empire IP Assignment/Successors</u>. Empire IP may transfer or assign its interest in this Agreement or the Patents provided that the transferee or assignee agrees to be bound by the terms of this Agreement in writing.

7.3. <u>Sale of Patents</u>. Any sale of the Patents shall be at Empire IP's sole discretion, provided that Patent Owner may elect, at Patent Owner's expense, and prior to any such sale, to obtain two

independent appraisals of the Licensed Patents, in which case Empire IP shall not sell the Patents for an amount less than the greater of such two appraisals. Empire IP will provide Patent Owner with at least thirty (30) days advance notice of any potential sale of the Patents. Patent Owner shall be entitled to Patent Owner's share of the Net Proceeds, as set forth in Section 2, resulting from any sale of the Patents.

8.  **GOVERNING LAW AND CONSENT TO JURISDICTION**

   8.1. Choice of Laws. This Agreement shall be governed by and construed under applicable federal law and the laws of the State of New York, excluding any conflict of law provisions. Empire IP and Patent Owner each irrevocably consent to the exclusive jurisdiction of any New York state or federal court sitting in New York County over any suit, action or proceeding arising out of or relating to this Agreement.

   8.2. Consequential Liability. In no event shall either Party be entitled to special, indirect, consequential damages for breach of this Agreement.

9.  **CONFIDENTIALITY**

   9.1. All information provided pursuant to this Agreement, including the terms of this Agreement, shall be regarded as confidential information ("Confidential Information"). The Parties agree that, other than as required by law, they shall not disclose any Confidential Information and shall use the Confidential Information only for the purposes set forth herein. Either Party may disclose Confidential Information to its financial advisors, partners, consultants and legal advisors subject to confidentiality obligations at least as stringent as those herein.

   9.2. Preservation of Privilege. The Parties agree that they may disclose Confidential Information in furtherance of their common legal interest in exploring business opportunities involving the Patents, which may be subject to the attorney-client privilege, work product doctrine or other privilege. The Parties agree that it is their desire and mutual understanding that the sharing of such Confidential Information is not intended to, and shall not, waive any applicable privilege.

10. **MISCELLANEOUS**

   10.1. Counterparts. This Agreement may be executed in several counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. A faxed or e-mailed copy of a signature page shall be considered an original for purposes of this Agreement.

   10.2. Prevailing Terms. If any conflict exists between the terms of this Agreement and the Assignment in Exhibit B, the terms of this Agreement shall control.

   10.3. Entire Agreement. This Agreement constitutes the entire understanding of the Parties with respect to its subject matter and may not be modified or amended, except in writing by the Parties.

   10.4. Severability. In the event that any provision of this Agreement shall be found by any court, regulatory or governmental agency, for whatever reason, to be unenforceable, that provision shall be deemed severed from the Agreement, with all other provisions of the Agreement to remain fully in force.

5

10.5. <u>Amendments and Waivers</u>.  This Agreement may not be amended nor may any rights hereunder be waived except by an instrument in writing signed by the party sought to be charged with such amendment or waiver.

10.6. <u>Waiver</u>.  Any failure by a party to pursue any breach of any provision of this Agreement shall not constitute a waiver of any other provision or a waiver of rights with respect to any future breach of this Agreement.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the date set forth below.

MAZ Technologies, Inc.

By: _____

Print Name: *Chris Mahne*

Title: *President*

Date: *10 - 18 - 2012*

Empire IP LLC

By: _____

Print Name: *Daniel Mistry*

Title: *MEMBER*

Date: *10 - 18 - 2012*

6

EXHIBIT A

U.S. PATENTS & APPLICATIONS

| US Patent No. | US Appl. No. | Filing Date | Issue Date | Title |
|---|---|---|---|---|
| 6,185,681 (RE5,378) | 09/074,191 | May 7, 1998 (Feb. 10, 2003) | Feb. 6, 2001 (May 23, 2006) | Method of transparent encryption and decryption for an electronic document management system |
| 6,981,141 | 09/259,991 | Mar. 1, 1999 | Dec. 27, 2005 | Transparent encryption and decryption with algorithm independent cryptographic engine that allows for containerization of encrypted files |
| 7,096,358 | 10/658,246 | Sept. 8, 2003 | Aug. 22, 2006 | Encrypting file system |
| 7,865,728 | 12/128,501 | May 28, 2008 | Jan. 4, 2011 | Biometric encryption and decryption |
| | 12/957,479 | Dec. 1, 2010 | | User Authentication System and Method for Encryption and Decryption |
| | | | | |
| | | | | |
| | | | | |

FOREIGN PATENTS & APPLICATIONS

| Foreign Patent or Publication No. | Publication Date | Filing Date | Country | Title |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

7



## EXHIBIT B

## ASSIGNMENT

**WHEREAS, MAZ** Technologies, Inc., a corporation having a place of business 3422 Old Capital Trail, Suite 700, Wilmington, DE 19808-6195 (hereafter, together with any successors, legal representatives or assigns thereof, called "Assignor") is the owner of the entire right, title, and interest to **U.S. Patent Nos. 6,185,681** (issued Feb. 6, 2001 and titled "Method of transparent encryption and decryption for an electronic document management system"); **6,981,141** (issued Dec. 27, 2005 and titled "Transparent encryption and decryption with algorithm independent cryptographic engine that allows for containerization of encrypted files"); **7,096,358** (issued Aug. 22, 2006 and titled "Encrypting file system"); **7,865,728** (issued Jan. 4, 2011 and titled "Biometric encryption and decryption") and **U.S. Application No. 12/957,479** (filed Dec. 1, 2010 and titled "User Authentication System and Method for Encryption and Decryption"), and all patents, patent applications, foreign patents, foreign patent applications, continuations, continuations-in-part, divisionals, extensions, renewals, reissues and re-examinations related to all inventions thereof, including without limitation all rights to claim priority on the basis thereof (the "Patents");

**AND WHEREAS, Empire IP LLC,** a Texas Limited Liability Company, having a place of business at 815 Brazos Street, Suite 500, Austin, Texas 78701 (hereafter, together with any successors, legal representatives or assigns thereof, called "Assignee") wants to acquire Assignor's entire right, title and interest in and to the Patents, including reissues and re-examinations, and Assignor is willing to grant all substantial rights in and to the Patents to Assignee.

**NOW, THEREFORE,** effective on the date of execution set forth below, and in consideration of the promises and mutual covenants contained herein and for other good and valuable consideration, the Parties agree as follows:

1.    *Assignment*.  Assignor does hereby sell, assign, transfer and convey to Assignee, its successors and assigns, Assignor's entire right, title and interest in and to the Patents to the full end of the term for which the Patent is granted, as fully and entirely as the same would have been held by Assignor had this assignment not been made.  The aforesaid assignment includes the Assignor's right in and to all income, royalties, damages and payments now, in the past or hereafter due or payable which may be granted, and in and to all causes of action, and the right to sue, counterclaim, and recover for past, present and future infringement of the Patents, as fully and entirely as the same would have been held by Assignor had this assignment not been made.  Assignor agrees not to challenge the validity and/or enforceability of the Patents or aid, abet, encourage, participate in, or induce any such challenge by a third party.

**Assignor** hereby covenants that it has full right to convey the entire interest herein transferred, and that it has not executed, and will not execute, any agreement in conflict with this Assignment.

Executed this _18_ day of October, 2012.

MAZ Technologies, Inc
_____
(Assignor)

By _____

Name  _Chris Mahne, President_

8

# EXHIBIT 2

October 25, 2012

Mr. Allan Rothstein
51 Dawn Harbor Lane
Riverside CT 06878

Re:    MAZ Technologies, Inc. Patent Portfolio

Dear Allan:

This letter memorializes our agreement concerning the enforcement, licensing and monetization of MAZ Technologies' patent portfolio, including, but not limited to, the enforcement, licensing and monetization of MAZ Technologies' patent portfolio by Empire IP LLC as set forth in the agreement entered into between MAZ Technologies and Empire IP LLC.

On behalf of MAZ Technologies, I have asked you to perform consulting services in connection with the enforcement, licensing and monetization of MAZ Technologies' patent portfolio.  In return for the consulting services that you have rendered to date, MAZ Technologies and I have agreed to pay you a fee equal to ten percent (10%) of any and all proceeds that MAZ Technologies and I receive in connection with the Agreement.  The fees will be payable within ten (10) days of my receipt of Net Proceeds as defined in the Agreement.

Yours truly,

Chris W. Mahne
President and Chairman
MAZ Technologies, Inc.

CONFIDENTIAL