UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
ALLAN ROTHSTEIN,

                Plaintiff,

      -against-

CHRISTOPHER MAHNE and MAZ
TECHNOLOGIES, INC.,

                Defendants.
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/5/2015

15-CV-3236 (VEC)

<u>MEMORANDUM
OPINION AND ORDER</u>

VALERIE CAPRONI, United States District Judge:

       Plaintiff Allan Rothstein brings this action against Defendants MAZ Technologies, Inc. ("MAZ") and Christopher Mahne, the President and Chairman of MAZ ("Mahne") (collectively, "Defendants"), alleging that Defendants breached a contract for Plaintiff's services relating to the sale of Defendants' patent portfolio to Empire IP LLC ("Empire"). Plaintiff's claims include the following counts: (I) breach of contract against all Defendants; (II) breach of contract against Mahne as alter-ego of MAZ; (III) unjust enrichment against all Defendants; (IV) quantum meruit against all Defendants; and (V) promissory estoppel against all Defendants. Defendants move to dismiss Plaintiff's Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the following reasons, Defendants' Motion to Dismiss is DENIED.

<b>BACKGROUND<sup>1</sup></b>

       In 2012, Defendant Mahne sought Plaintiff's help in monetizing a portfolio of patents regarding computer security technology. Am. Compl. ¶ 7. Mahne allegedly owned the patent portfolio, "indirectly, through MAZ, a company that he owns and controls." *Id.* Plaintiff agreed

---

[1]     The facts are taken from the Amended Complaint. At this stage in the litigation, the Court assumes that all facts alleged in the Amended Complaint are true. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

1

to help Mahne by finding potential buyers or other business opportunities. *Id*. ¶¶ 8–9. In return for Plaintiff's assistance, Mahne initially promised to pay Plaintiff an unspecified portion of the proceeds from any sale or business transaction relating to the portfolio and agreed that he would be personally bound by the agreement to pay. *Id.* ¶¶ 9–10. Plaintiff alleges that, in reliance on Defendants' promises, he subsequently began working to identify potential business partners and opportunities. *Id.* ¶ 11. Plaintiff alleges that he connected Mahne, as president of MAZ, to Empire, a company that specializes in monetizing patent portfolios, and negotiated with Empire on Defendant Mahne and MAZ's behalf. *Id.* ¶¶ 13–15.

On October 18, 2012, Defendant MAZ sold the patent portfolio to Empire pursuant to a "Sale and Transfer Agreement" ("Empire Contract"). *Id.* ¶ 17. The Empire Contract contemplated that Empire would bring legal actions for infringement of the patent portfolio and would pay a percentage of any proceeds obtained from those lawsuits to MAZ as consideration for the sale of the patents. *Id.* ¶¶ 17–18; *see also id*. at Ex. 1, §§ 1.1, 2.1.

Plaintiff contends that, at some point prior to the finalization of the Empire Contract on October 18, 2012, and also prior to the completion of his work on the deal, Defendants Mahne and MAZ agreed to pay Plaintiff ten percent of any amounts payable to them under the soon-to-be-finalized Empire Contract. *Id.* ¶¶ 16, 20–22. Plaintiff alleges that "agreement [was] documented in numerous emails and was clearly stated on many occasions in other communications." *Id.* ¶ 21. Relying on that agreement, Plaintiff continued to work on the transaction with Empire. *Id.* ¶ 23. Plaintiff also alleges that in numerous discussions, emails and other communications, Mahne agreed that he was personally bound to pay Plaintiff for his work. *Id.* ¶¶ 10, 16. On October 25, 2012, after the Empire Contract had been finalized, "the contract between [Plaintiff] and the Defendants was memorialized in a written letter agreement," a copy

of which Plaintiff attached to the Amended Complaint. *Id.* ¶ 24, Ex. 2. The October 25, 2012 letter states:

> This letter memorializes our agreement concerning the enforcement, licensing and monetization of MAZ Technologies' patent portfolio, including, but not limited to, the enforcement, licensing and monetization of MAZ Technologies' patent portfolio by Empire IP LLC as set forth in the agreement entered into between MAZ Technologies and Empire IP LLC.
>
> On behalf of MAZ Technologies, I have asked you to perform consulting services in connection with the enforcement, licensing and monetization of MAZ Technologies' patent portfolio. In return for the consulting services that you have rendered to date, MAZ Technologies and I have agreed to pay you a fee equal to ten percent (10%) of any and all proceeds that MAZ Technologies and I receive in connection with the Agreement. The fees will be payable within ten (10) days of my receipt of Net Proceeds as defined in the Agreement.

*Id.* at Ex. 2. The letter is signed by Defendant Mahne, and the title under his signature is "President and Chairman MAZ Technologies, Inc." *Id.*

Subsequently, Empire assigned its rights in the patent portfolio to MAZ Encryption Technologies LLC, an Empire subsidiary. According to Plaintiff, MAZ Encryption Technologies LLC filed and settled approximately twelve patent infringement actions with various major computer, software, and electronic companies. *Id.* ¶¶ 28–34. Even though Empire and its affiliates have settled significant patent litigation and paid a percentage of those proceeds to Defendants, Defendants have not paid Plaintiff. *Id.* ¶ 35.

## DISCUSSION

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550

U.S. at 556). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "At this stage, dismissal is appropriate only where [Plaintiff] can prove no set of facts consistent with the complaint that would entitle [him] to relief." *Meyer v. JinkoSolar Holdings Co., Ltd.*, 761 F.3d 245, 249 (2d Cir. 2014).

## I. Plaintiff Adequately Alleges the Existence of an Enforceable Contract

To defeat the Motion to Dismiss, Plaintiff must have plausibly alleged "'(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). Defendants challenge only the adequacy of the allegations as to the first element, arguing that Plaintiff has not alleged the existence of an enforceable contract. According to Defendants, the alleged contract is unenforceable because it runs afoul of (1) the New York Statute of Frauds, N.Y. Gen. Oblig. Law section 5–107, which requires that certain contracts be in writing, and (2) N.Y. Gen. Oblig. Law section 5–1105, which governs contracts based on past consideration.

Defendants argue that Plaintiff has failed to allege an enforceable contract because, if Plaintiff purports to rely on an oral agreement, the contract's subject matter requires it to be in

writing in order to comply with the New York Statute of Frauds.  Defs. Mem. at 18–21.[2]  Under New York Law, an oral agreement can create a binding contract. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74–76 (2d Cir. 1984) (citing New York law); *see also Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).  As Plaintiff correctly argues, "[a]n oral contract may be binding even if the parties plan to create a documentary record of the agreement." *Pretzel Time, Inc. v. Pretzel Int'l, Inc.*, No. 98 CIV. 1544, 2000 WL 1510077, at *3 (S.D.N.Y. Oct. 10, 2000); *see also Winston*, 777 F.2d at 80 ("freedom to contract orally remains even if the parties contemplate a writing to evidence their agreement. In such a case, the mere intention to commit the agreement to writing will not prevent contract formation prior to execution.").[3]

Defendants acknowledge, Defs. Reply at 3–4 (Dkt. 28), that under New York law the Statute of Frauds does not preclude oral agreements whose terms are later memorialized in a writing signed by the party to be charged.  *See, e.g.*, N.Y. Gen. Obtl. Law § 5-701(b)(3)(d) ("Notwithstanding paragraph one of subdivision a of this section: . . . There is sufficient evidence that a contract has been made if: . . . There is a note, memorandum or other writing sufficient to indicate that a contract has been made, signed by the party against whom enforcement is sought or by its authorized agent or broker."); *In re Urdang*, 758 N.Y.S.2d 125, 126 (2d Dep't 2003) (alleged oral agreement did not violate the statute of frauds because "[t]he oral agreement was

---

[2] Defendants argue that the services Plaintiff allegedly performed, namely helping them find potential buyers or business partners for the patent portfolio, constitute "negotiating a business opportunity," and thus, the purported contract is governed by the New York Statute of Frauds. *See* Defs.' Mem. at 19–20 (Dkt. 24) (N.Y. Gen. Obtl. Law § 5–701(a)(10)). As discussed herein, even assuming Defendants are correctly characterizing the Plaintiff's services—a point Plaintiff does not contest—Plaintiff adequately alleges compliance with the Statute of Frauds.

[3] "On the other hand, if either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract." *Winston*, 777 F.2d at 80; *see also R.G. Grp., Inc.*, 751 F.2d at 74.  Here, there is no allegation that the parties communicated an intent not to be bound until they had created a fully executed document.

memorialized in a writing signed by the . . . party to be charged, and capable of being performed within one year of its making;" and "[t]here [is] no requirement that the writing be made contemporaneously with the oral agreement."). Defendants argue, however, that this exception to the Statute of Frauds does not rescue Plaintiff's case because the Amended Complaint does not clearly allege a specific oral agreement that was later memorialized by the October 25, 2012 Letter.  Defs. Reply at 4.

While not a model of drafting, the Amended Complaint alleges that Defendants agreed to pay Plaintiff ten percent of all proceeds from Empire's litigation regarding the patents at issue. Am. Compl. ¶ 20.  The Amended Complaint further alleges that the agreement was reduced to writing in emails dated September 26 and 27, 2012, *id.* ¶¶ 20–22,[4] and was further memorialized in the October 25, 2012 Letter signed by the Defendants, *id.* ¶ 24.  The language in the October 25, 2012 Letter is consistent with Plaintiff's allegation that the Letter memorialized a pre-existing agreement ("[t]his letter *memorializes our agreement* concerning the enforcement, licensing and monetization of MAZ Technologies' patent portfolio;" "I have asked you to perform;" "I have agreed to pay."). *Id.* at Ex. 2.  Drawing all inferences in Plaintiff's favor, the Amended Complaint adequately alleges that the essential terms of the contract were reduced to a writing signed by the Defendants. *Id.* ¶¶ 1, 20, 25.  Therefore, Plaintiff adequately alleges, at this stage of the litigation, the existence of a contract that complies with the Statute of Frauds.

Second, the Defendants argue that Plaintiff has not alleged the existence of an enforceable contract because the October 25, 2012 Letter relies only on past consideration and therefore must comport with N.Y. Gen. Oblig. Law section 5-1105 to be enforceable.  Defs.

---

[4] The Plaintiff does not attach the September 26 and 27 emails to his Amended Complaint, leaving the Court to wonder whether they are as supportive of his claim as the Amended Complaint alleges.  At the motion to dismiss stage, however, the Court has to assume the truth of the allegations in the Amended Complaint.

Mem. at 6–12.[5]  The Amended Complaint is admittedly confusing at times regarding precisely at what moment Plaintiff alleges the parties formed the contract.  For instance, Plaintiff refers to the October 25, 2012 Letter as "the contract" between Plaintiff and Defendants.  *See, e.g.*, Am. Compl. ¶¶ 25–27, 41.  Elsewhere, however, the Amended Complaint implies that the October 25, 2012 Letter was not itself *the* contract but was merely the memorialization of an agreement that had been reached previously.  *Id.* ¶¶ 20–24.  While the October 25, 2012 Letter does appear to rely only on past consideration, *id.* at Ex. 2, the Amended Complaint specifically states that, "before [Plaintiff] completed his work in negotiating with Empire to complete the sale transaction," Defendants agreed to pay him ten percent of their recovery from the Empire Contract.  *Id.* ¶ 21.  When drawing all inferences in Plaintiff's favor, as this Court must at this stage of the case, Plaintiff has sufficiently alleged the formation of an agreement supported by more than past consideration.  *See Esmilla v. Cosmopolitan Club*, 936 F. Supp. 2d 229, 251 (S.D.N.Y. 2013) (Court not persuaded that an agreement was supported only by past consideration, where it "was 'not based solely on past consideration, but on present and future consideration.'" (quoting *Ryan v. Kellogg Partners Institutional Servs.*, 914 N.Y.S.2d 81, 83 (1st Dep't 2010), *aff'd*, 968 N.E.2d 947 (2012)).  Because the Amended Complaint alleges, at a minimum, a contract that is not based entirely on past consideration, N.Y. Gen. Oblig. Law section 5-1105 does not control the Court's evaluation regarding whether the Amended Complaint states a cause of action.[6]

---

[5]     N.Y. Gen. Oblig. Law section 5–1105 sets forth the limited conditions under which a contract can be enforceable, even if based only on past consideration: "the writing must contain an unequivocal promise to pay a sum certain, at a date certain, and must express consideration for the promise." *Kreuter v. Tsucalas*, 734 N.Y.S.2d 185, 188 (2d. Dep't 2001).

[6]     In light of the Court's determination that Plaintiff has adequately alleged the formation of a contract before he had fully performed, the Court need not consider the parties' arguments regarding whether the October 25, 2012 Letter complies with N.Y. Gen. Oblig. Law section 5–1105.

In sum, Counts I and II of the Amended Complaint plead sufficient facts to allege the existence of an enforceable contract that was breached.

## II. Plaintiff Adequately Alleges that Mahne is Personally Liable as MAZ's Alter-Ego

Defendants argue that Plaintiff's breach of contract claim against Mahne as an alter-ego for MAZ (Count II) should be dismissed because it is "wholly conclusory and speculative and fails to satisfy the requisite pleading requirements." Defs. Mem. at 15. "Under New York law, a court may pierce the corporate veil where 1) 'the owner exercised complete domination over the corporation with respect to the transaction at issue,' and 2) 'such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" *MAG Portolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)). "To avoid dismissal, a party seeking application of the doctrine must come forward with factual allegations as to both elements of the veil-piercing claim." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 274 (S.D.N.Y. 2004). Where a veil-piercing claim is not premised upon an allegation of fraud, it is subject to the liberal pleading standard of Fed. R. Civ. P. 8(a). *Id.*

Defendants argue that Plaintiff fails sufficiently to allege both prongs necessary to pierce the corporate veil. Regarding the first prong, Defendants contend that Plaintiff "merely alleges, entirely upon information and belief, that Mahne dominated Maz," but does not articulate any facts from which the Court could plausibly infer that Mahne did so with regard to the transaction at issue. Defs. Mem. at 16–17. As to the second prong, Defendants argue that Plaintiff failed to plead any facts to support an inference that Mahne committed a fraud or wrong. *Id.* at 17.

In *Arista Records, LLC v. Doe* 3, the Second Circuit held that:

> The *Twombly* plausibility standard, which applies to all civil actions . . . does not prevent a plaintiff from "pleading facts alleged 'upon information and belief'" where the facts are peculiarly within the possession and control of the defendant,

8

> . . . or where the belief is based on factual information that makes the inference of culpability plausible. . . . The *Twombly* Court stated that "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]."

604 F.3d 110, 120 (2d Cir. 2010) (citations omitted).  Allegations, when based upon information or belief, "must be 'accompanied by a statement of the facts upon which the belief is founded.'" *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 527 (S.D.N.Y. 2013) (quoting *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006).  The statement of facts must amount to more than mere conjecture and speculation.  *Pakter*, 931 F. Supp. 2d at 527.

Plaintiff adequately alleges facts to raise a reasonable expectation that discovery will reveal evidence to support his veil-piercing claim.  For the first prong, Plaintiff includes sufficient factual allegations from which the Court can infer Defendant Mahne's domination of MAZ, including, *inter alia*: MAZ is a shell company used by Mahne that has no employees, no operations, no office, and no board of directors, officers, or decision makers other than Mahne, Am. Compl. ¶ 48; Mahne commingles his own assets with those of MAZ, *id.* ¶ 51; and Mahne withdraws and appropriates MAZ's assets and money for his own personal use and benefit, *id.* For the second prong, Plaintiff includes sufficient factual allegations from which the Court can infer that Defendant Mahne used his domination over MAZ to commit a wrong that injured Plaintiff, such as that: payments made by Empire or its affiliates were personally accepted by Mahne, *id.* ¶¶ 32, 52; Mahne personally appropriated MAZ's assets and abused the MAZ corporate form by putting the monies owed to [Plaintiff] out of reach," *id.* ¶ 55; and Mahne transferred money out of MAZ to Panama, where Mahne maintains a personal residence and other assets.  *Id.*

In short, Count II adequately alleges that Mahne is liable as MAZ's alter-ego for purposes of defeating Defendants' Motion to Dismiss.

### III. The Amended Complaint Adequately Alleges that Mahne is Personally Liable

Defendants contend that the claims against Mahne individually should be dismissed in their entirety because Plaintiff fails to allege any "clear and explicit evidence" that Mahne intended to be personally liable for MAZ's commitments. Defs. Mem. at 12–15.

Plaintiff has sufficiently alleged at this stage that Mahne intended to be held individually responsible to pay Plaintiff, notwithstanding the fact that the October 25, 2012 Letter contains language that supports both parties' position regarding Mahne's intent. As Defendants argue, the October 25, 2012 Letter provides that Mahne was acting "[o]n behalf of Maz Technologies" and contains a designation below his signature for his position as "President and Chairman" of MAZ. Am. Compl. at Ex. 2. In contrast, as Plaintiff notes, the October 25, 2012 Letter also states: "In return for the consulting services that you have rendered to date, MAZ Technologies *and I* have agreed to pay you a fee equal to ten percent (10%) of any and all proceeds that MAZ Technologies *and I* receive in connection with the Agreement [Empire Contract]." *Id.* at Ex. 2 (emphasis added). In addition to the language in the October 25, 2012 Letter, however, the Amended Complaint includes numerous other allegations supporting the claim that Mahne intended to be personally responsible, including: "[a]t the time that Mahne promised to pay [Plaintiff] . . . Mahne and [Plaintiff] agreed that Mahne would be personally bound by the agreement;" "[i]n subsequent discussions with [Plaintiff], Mahne agreed that both he, personally, and MAZ would be bound by Mahne's promise to pay [Plaintiff];" and "Mahne's agreement to be personally bound is evidenced by numerous emails and other discussions and communications." *Id.* ¶ 10. The Amended Complaint further alleges that "[t]hroughout the course of negotiations with Empire, the contract between [Plaintiff] and Defendants' [sic] was continuously reaffirmed by Mahne in emails and other communications, including the agreement that both Mahne, individually, and MAZ were bound to pay [Plaintiff] for his services." *Id.* ¶ 16.

The Court is persuaded that the language in the October 25, 2012 Letter, together with Plaintiff's other allegations, adequately pleads Mahne's intention to be personally bound.[7]

Accordingly, none of the Counts in the Amended Complaint should be dismissed as to Mahne individually.

### IV. Defendants' Arguments Regarding Counts III, IV, V Are Foreclosed Because Plaintiff Has Adequately Alleged Compliance with the Statute of Frauds

The only arguments Defendants make in their Motion to Dismiss regarding Count III for unjust enrichment, Count IV for quantum meruit, and Count V for promissory estoppel rest on their argument that Plaintiff's breach of contract action is barred by the Statute of Frauds. In light of the Court's holding that Plaintiff has adequately alleged compliance with the Statute of Frauds, Defendants' Motion to Dismiss Counts III, IV, and V of the Amended Complaint is DENIED.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED. The Clerk of Court is respectfully directed to terminate Docket Entry 23.

**SO ORDERED.**

Date: November 5, 2015　　　　　　　　　　　　　**VALERIE CAPRONI**
New York, New York　　　　　　　　　　　　　　**United States District Judge**

---

[7] Defendants also argue in passing that the contract is not enforceable against Mahne because Mahne did not receive consideration in his individual capacity. Defs. Mem. at 15. Even if that were true, the Court finds persuasive, at this stage of the litigation, Plaintiff's argument that Mahne would be no different than any guarantor who personally guarantees the payment obligation of a corporation for services provided to the corporation. Pl. Opp'n at 18 (Dkt. 25).