**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____X          Case No. 15-CV-3236 (VEC)

ALLAN ROTHSTEIN

      Plaintiff,

v.

CHRISTOPHER MAHNE and
MAZ TECHNOLOGIES, INC.,

      Defendants.
_____X

## PLAINTIFF'S MOTION TO COMMENCE DAMAGES DISCOVERY

      Plaintiff, Allan Rothstein, respectfully requests the entry of an Order commencing discovery on the issue of damages.

      The evidence that has been developed in discovery to date, including the Defendants' own admissions in deposition, as well as voluminous and overwhelming documentary evidence, establishes a very strong *prima facie* case of liability. Among other things, Defendants admitted in deposition that:

- MAZ agreed to pay Allan Rothstein for work in connection with the Empire Agreement.

- The agreement was later confirmed and memorialized in the letter of October 25, 2012, attached to the Amended Complaint as Exhibit 2 (the "Mahne Letter").

- The terms of the agreement set forth in the Mahne Letter were agreed to in discussions and conversations between Mahne and Rothstein prior to the date when the Mahne Letter was signed.

- Exhibit 2 to the Amended Complaint is an accurate copy of the Mahne Letter.

- Mr. Mahne reviewed and signed the Mahne Letter.

- Rothstein performed work related to the Empire Agreement.

- MAZ has received payments in connection with the Empire Agreement.

- Defendants have not paid Allan Rothstein anything.

In light of this evidence, described in further detail below, there is – at a minimum – a triable issue as to liability.[1]

To date, Defendants and third-parties have not provided any discovery on the issue of damages, although the necessary information to prove Plaintiff's damages at trial is in their possession. Defendants have represented that the damages are "approximately $200,000.00", but information collected by Plaintiff from publicly available sources, as well as other documents, indicates that this figure is not reliable.

By searching public records, Plaintiff independently discovered a recent settlement of a lawsuit, involving the MAZ patent portfolio, against Lenovo. Defendants did not make Plaintiff aware of the Lenovo settlement, and money from the Lenovo settlement was not included in the $200,000.00 estimate provided by Defendants. To date, Defendants have not revised or otherwise attempted to recalculate the damages to include sums from the Lenovo settlement. In addition, Plaintiff has discovered that several new patent lawsuits were recently filed, and other documents indicate that further payments may be owed. Plaintiff needs discovery on these matters to determine, verify and prove the appropriate amount of damages.

The Court has now denied Defendants' Motion to Dismiss, and significant discovery has taken place on the issue of liability, particularly the deposition of the Defendants. The evidence developed to this point strongly supports a finding of liability. Discovery on the issue of damages is now necessary to the prompt and efficient resolution of this case, whether through trial, summary judgment, settlement, or otherwise. Now is the appropriate time to commence discovery as to damages.

---

[1] Based on Defendants' deposition admissions, Plaintiff is evaluating a summary judgment motion against Defendant MAZ.

## BACKGROUND

### 1. Defendants' Breach Of Contract

Defendants MAZ Technologies, Inc. and Christopher Mahne, MAZ's principal, hired Plaintiff, Allan Rothstein, to assist Defendants in selling or otherwise monetizing Defendants' portfolio of patents.  The parties agreed orally that Rothstein would get 10 percent of any proceeds that MAZ or Mahne recovered from the patents and that Mahne would be personally liable for MAZ's obligation to pay Rothstein (the "Rothstein Agreement").

The terms of the Rothstein Agreement were later confirmed in writing, both in email exchanges between the parties and by a signed letter that Mahne sent to Rothstein on October 25, 2012 (the "Mahne Letter").  Rothstein performed his services based on this agreement.

As a result of Rothstein's work, Defendants sold their patents to a company called Empire IP LLC ("Empire"), which was able to monetize the patents through infringement litigation, netting Defendants millions of dollars.  After collecting millions on their patents (which they could not have done without Rothstein's work), Defendants refused to pay Rothstein even a dime.  This lawsuit followed.

### 2. Bifurcation and Damages Discovery

Plaintiff served discovery requests on the Defendants requesting documents and interrogatory answers that would identify the date of Defendants' breach of contract and the amount of damages owed to Plaintiff.  Defendants' responded by serving objections to these requests and have refused to produce any responsive documents or interrogatory answers on the issue of damages.[2]  Plaintiff attempted to compel discovery, and the Court denied the request to compel at telephonic hearings conducted on September 24, and October 9, 2015, and again in a

---

[2] Defendants also refused to provide answers to most deposition questions on the issue of damages.

written Order dated October 21, 2015.  The Court further ordered that discovery should be bifurcated, with liability discovery to proceed immediately and damages discovery to commence at a later time, following the Court's consideration of Defendants' then pending Motion to Dismiss. At that time, the Court left open the question of precisely when damages discovery should commence.

To date, Defendants have not provided any evidence on the issue of damages, although Defendants' counsel has represented that the amount is "approximately $200,000.00."  In addition, in reliance on the Court's bifurcation Order, third-parties have refused to provide evidence on the issue of damages in response to subpoenas issued by Plaintiff.

### 3.  <u>Subsequent Events</u>

Following the Court's Order bifurcating discovery, the parties have conducted substantial discovery on the issue of liability, including the taking of Defendants' depositions.  In addition, the Court has denied the Defendants' Motion to Dismiss.

The parties have completed document production, answered interrogatories, and responded to requests for admission.  In addition, on November 19 and 20, 2015, Mahne testified in a deposition, both in his individual capacity and as the corporate representative of MAZ.  As discussed in detail below, the evidence developed in discovery overwhelmingly supports a finding of liability.

Further, on November 5, 2015, the Court entered an Order denying Defendants Motion to Dismiss [DE 35].  Among other things, the Court held that Plaintiff adequately alleged breach of an enforceable contract and that Defendant Mahne is personally liable.

On November 20, 2015, the Court conducted a status conference and granted Plaintiff's request to submit the instant motion, requesting commencement of discovery on damages.

## ARGUMENT

## I.   Liability

Under New York law, there are four elements to a breach of contract claim: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.  *Rothstein v. Mahne*, 2015 U.S. Dist. LEXIS 151056, *6 (S.D.N.Y. Nov. 5, 2015) (quoting *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011)).  The evidence developed in discovery to date supports a finding of liability on each of these elements.[3]

### 1.   Existence Of An Agreement

On November 19 and 20, 2015, Mr. Mahne testified on behalf of himself, individually, and also as the corporate representative of MAZ.  Transcripts of the deposition are attached hereto as **Exhibits 1 & 2** (cited as "*Mahne Dep*.", followed by page and line).  Defendants, through Mr. Mahne, admitted the following in deposition:

- MAZ agreed to pay Allan Rothstein for work in connection with the Empire Agreement. (*Mahne Dep*. at 48:2-8; 104:12-20).

- The agreement was later confirmed and memorialized in the letter of October 25, 2012, attached to the Amended Complaint as Exhibit 2 (the "Mahne Letter"). (*Mahne Dep*. at 48:2-8; 104:12-20; 319:12-22; 320:13-19; 324:18-325:7).

- The terms of the agreement set forth in the Mahne Letter were agreed to in discussions and conversations between Mahne and Rothstein prior to the date when the Mahne Letter was signed.  (*Mahne Dep*. 319:12-22; 320:13-19; 324:18-325:7).

- At the time MAZ agreed to pay Rothstein, it was agreeing to pay him for work that was to be performed **after** the date of the agreement. (*Mahne Dep*. at 48:15-22).

- Exhibit 2 to the Amended Complaint is an accurate copy of the Mahne Letter.  (*Mahne Dep*. 51:19-52:2).

---

[3] Although voluminous evidence is submitted in support of the instant motion, in an effort to avoid needlessly inundating the Court, much additional evidence supporting Plaintiff's claim has been omitted.  Should the Court have any reservations about the facts, Plaintiff would be pleased to supplement the instant motion accordingly.

- Mr. Mahne reviewed and signed the Mahne Letter. (*Mahne Dep*. 56:14-19).

The Mahne Letter itself, which is addressed to Rothstein and signed by Mahne, states as follows:

> This letter memorializes our agreement concerning the enforcement, licensing and monetization of MAZ Technologies' patent portfolio, including, but not limited to, the enforcement, licensing and monetization of MAZ Technologies' patent portfolio by Empire IP LLC as set forth in the agreement entered into between MAZ Technologies and Empire IP LLC.
>
> On behalf of MAZ Technologies, I have asked you to perform consulting services in connection with the enforcement, licensing and monetization of MAZ Technologies' patent portfolio. In return for the consulting services that you have rendered to date, MAZ Technologies and I have agreed to pay you a fee equal to ten percent (10%) of any and all proceeds that MAZ Technologies and I receive in connection with the Agreement. The fees will be payable within ten (10) days of my receipt of Net Proceeds as defined in the Agreement.

Amended Complaint [DE 17] at Ex. 2.

This evidence alone establishes the existence of a valid and enforceable contract. *See Rothstein v. Mahne*, 2015 U.S. Dist. LEXIS 151056 (S.D.N.Y. Nov. 5, 2015) (discussing allegations in the Amended Complaint that could establish liability if supported by evidence).

In addition, dozens of documents introduced into evidence in Defendants' deposition, establish the existence of a valid and enforceable contract. The majority of these documents are emails between Mr. Mahne (using the email address CM@healthcare-recovery.com), Mr. Rothstein (using the email address ar@healthcare-recovery.com), and lawyers from Reyhani Nemirovsky LLP ("RN LLP"), one of three law firms that represented Defendants in connection with the Empire Agreement. These documents show, among other things:

- On September 6, 2012, Defendants' attorneys sent Rothstein a draft of the Mahne Letter. **Exhibit 3**. The language in the draft is substantially similar to the final Mahne Letter, executed on October 25, 2012. The draft states that it "memorializes our agreement," strongly suggesting that the oral Rothstein Agreement was already in place by September 6, 2012. This draft also includes all the essential terms, including the agreement to pay Rothstein 10%. This draft differs from the final Mahne Letter in that it states, "In return for the consulting services that you have rendered to date, *and which you will continue to perform in the future,* MAZ

Technologies and I have agreed to pay you a fee equal to ten percent …". (emphasis added). This language in the draft, combined with Defendants' deposition admission that, at the time MAZ agreed to pay Rothstein, it was agreeing to pay him for work that was to be performed **after** the date of the agreement (*Mahne Dep.* at 48:15-22), conclusively defeats Defendants' prior arguments that the agreement was supported only by past consideration.

- On September 25, 2012, Rothstein emailed Mahne, with a copy of the draft Mahne Letter attached.  **Exhibit 4**.  By this time, the draft had been revised to state that "In return for the consulting services *that you have rendered to date*, MAZ Technologies and I have agreed to pay you a fee equal to ten percent…". (emphasis added).

- On September 26-27, 2012, Mahne and Rothstein exchanged emails discussing and acknowledging the exact payment terms of the Rothstein Agreement, including the agreement to pay Rothstein 10% of the Defendants' recovery (which is equal to 6.25% of the total recovery from the patent litigation contemplated by the Empire Agreement).  **Exhibits 5 & 6**.  In Defendants' deposition, Defendants admitted that the agreement discussed in these emails is the same agreement that was later memorialized in the Mahne Letter. (*Mahne Dep*. 324:18-325:7).  Thus, in addition to the drafts of the Mahne Letter, these emails confirm that the essential terms of the Rothstein Agreement, including the agreement to pay 10%, were already agreed upon orally well in advance of October 25, 2012.

- In an email dated April 9, 2014, nearly 18 months after the Empire Agreement and the Mahne Letter, Mahne wrote to Rothstein, acknowledging the validity of the contract by stating, "**the MAZ deal with Empire that you put together and was closed in the month of October 2012 should make you over $ 1 million dollars**." **Exhibit 7** (emphasis added).

### 2.  Performance By The Plaintiff

Mr. Rothstein's adequate performance of the contract is conclusively proven, in the first instance, by the language of the Mahne Letter itself, which states in relevant part:

> In return for the consulting services **that you have rendered to date**, MAZ Technologies and I have agreed to pay you a fee equal to ten percent (10%) of any and all proceeds that MAZ Technologies and I receive in connection with the Agreement.

Amended Complaint [DE 17] at Ex. 2 (emphasis added).

This language shows that by the time the Mahne Letter was signed, on October 25, 2012, Mr. Rothstein had already fully and adequately performed his work under the contract.  This makes perfect sense in light of the fact that the MAZ patent portfolio was successfully sold to Empire on October 18, 2012, the date of the Empire Agreement.  By signing the Mahne Letter on October 25,

2012, Mr. Mahne acknowledged that Mr. Rothstein had fully and adequately performed, and was entitled to the promised payment of 10%.

Mahne himself acknowledged Rothstein's adequate performance in emails he sent after October 25, 2012.  For example:

- On December 3, 2012, Mahne wrote to Nick Molina, one of Mahne's business partners in an electronic cigarette company, stating in relevant part that "I have confirmed dinner with Allan Rothstein (he put together my Maz deal) [he's] a very sharp Wall Street deal guy." **Exhibit 8**.

- On December 6, 2012, Mahne wrote to Molina once again, stating "[You'll] be meeting Allan Rothstein the guy who put together my MAZ IP deal with http://rnlawfirm.com/ and http://www.empireipllc.com/." **Exhibit 9**.

- On October 25, 2013, exactly one year after signing the Mahne Letter, Mr. Mahne wrote to Yariv Alima, stating "Yariv, Allan [Rothstein] is top shelf when it comes to matching up the right players.  He put the deal together with my software company MAZ to monetize our Patent Portfolio . . . He will get you guys the best deal." **Exhibit 10**.

- On April 9, 2014, nearly 18 months after the Empire Agreement and the Mahne Letter, Mahne wrote to Rothstein, stating, "**the MAZ deal with Empire that you put together and was closed in the month of October 2012 should make you over $ 1 million dollars**." **Exhibit 7** (emphasis added).

In addition to these emails, and the others cited above, Rothstein's performance is documented in dozens of other emails sent in the weeks and months preceding the Empire Agreement, during the period from July 24, 2012, to October 18, 2012.  These emails show Rothstein actively participating in the negotiation and drafting of the Empire Agreement, making suggested changes to the terms of the draft Empire Agreement, and working with Mahne and his counsel to review and comment on the Empire Agreement.  In the interest of brevity, only a few examples are cited herein, but many, many more are available:

- On August 22, 2012, Rothstein wrote to Mahne, indicating that he had questions on a number of deal points included in the draft Empire Agreement. **Exhibit 11**.

- On August 23, 2012, Mahne wrote to Rothstein asking that he "figure out a list of questions" for a discussion with Empire regarding the Empire Agreement. **Exhibit 12**.

- On August 24, 2012, Mahne wrote to RN LLP, in reference to drafts of the Empire Agreement, "I am reviewing this with Allan [Rothstein] and other counsel and will get back to you both once I have the follow up." **Exhibit 13**.

- On September 6, 2012, Rothstein exchanges emails with RN LLP regarding a meeting with Daniel Mitry of Empire. **Exhibit 14**.

- On September 13, 2012, Rothstein had an email exchange with RN LLP about the Empire Agreement. RN LLP wrote to Rothstein, among other things, "We revised the agreement based on your edits and our discussion yesterday," and "Let us know what you think. We would like your input on this draft before sending it to Dan [Mitry, of Empire]." **Exhibit 15**.

- On October 16, 2012, Mahne wrote an email to Rothstein with the subject heading "MAZ Final drafts", stating "Allan, Please send me the final draft agreements (all)." **Exhibit 16**.

- On October 16, 2012, Mahne wrote to Rothstein, attaching a draft of the Empire Agreement and stating, "[Here's] my final edits please review and make any comments to me via call. I have no changes with yours." **Exhibit 17**.

### 3. <u>Breach Of Contract By The Defendants</u>

This element of Plaintiff's breach of contract claim has never truly been in dispute, as Defendants concede that MAZ received payments related to the Empire Agreement, and did not pay Rothstein any of that money. If there were ever any doubt, it was dispelled at Defendants' deposition, when Mr. Mahne testified under oath, admitting the following on behalf of himself individually and as the corporate representative of MAZ:

Q: Mr. Mahne, do you deny that as we sit here today, MAZ has been paid sums of money as a result of the patent litigation described in the Empire agreement?

A: I can answer?

MR. LACKOWITZ: You can answer that, yes.

THE WITNESS: Yes, we have been paid. MAZ has been paid.

(*Mahne Dep.* at 98:17-25).

Q: And in connection with that transaction between MAZ and Empire, as of today MAZ has received money related to that transaction, correct?

A: Correct.

9

(*Mahne Dep*. at 198:15-19).

Q: Okay.  And in connection with those payments that were received by MAZ, you agree that neither you, Chris Mahne or MAZ has paid Allan Rothstein anything, correct?

A: Correct.

(*Mahne Dep*. at 199:9-13).

### 4. **Damages**

Similar to the element of breach discussed above, the element of damages has never truly been in dispute (at least the *fact* of damages, as opposed to the amount).  Defendants readily admit that Plaintiff has not been paid anything at all.  (*Mahne Dep*. at 199:9-13).  The only real dispute that remains related to damages is the amount.  Defendants have represented that the amount is "approximately" $200,000.00, but have presented no proof.

## II. **Damages Discovery**

In order to finally resolve this case – through trial, summary judgment, or otherwise – Plaintiff must be able to introduce evidence showing the appropriate amount of damages (a subject that is relevant and within the scope of Rule 26).

Here, determining the proper amount of damages requires a calculation – it is not a fixed dollar amount as one would find in a note, for example.  Without seeing the underlying evidence, it is not possible for Plaintiff to determine whether the amount represented by Defendants as "approximately $200,000.00" was correctly calculated by the Defendants, even putting aside obvious questions about the Defendants' credibility on the matter.

In fact, the limited evidence that Plaintiff has been able to uncover to this point suggests that the $200,000.00 figure is not reliable.  For example, Defendants testified that the only payment received by Defendants related to the Empire Agreement, and the ensuing patent litigation, was a

one time, lump sum, payment from a company called RPX that settled a number of the outstanding patent cases.  (*Mahne Dep*., Vol. 2, at 68:9-17; 71:10-23; 73:2-6).  Presumably, this was the sum Defendants used to calculate the $200,000.00 figure.  However, a 2014 letter from RN LLP, Defendants' attorneys, refers to the RPX settlement and states that "Our fees have only been **partially paid by the initial settlement**."  **Exhibit 18** (emphasis added).

Further, a week prior to Defendants' deposition, a court order was entered granting a stipulation of dismissal in the MAZ Encryption patent infringement case against Lenovo.  **Exhibit 19**.  A prior filing in that case indicates that as of September 16, 2015, the parties expected to complete a settlement agreement within 30 days.  **Exhibit 20**.  In deposition, Defendants denied receiving any sums in connection with the Lenovo settlement.  (*Mahne Dep*., Vol. 2, at 73:18-25).  Plaintiff was not notified of the Lenovo settlement by Defendants, and no effort has been made by Defendants to revise the estimated damages to account for the Lenovo settlement.

Finally, Plaintiff has independently discovered public records show that MAZ Encryption filed several new patent cases on November 12, 2015, against Apricorn, Inc., CDW Corporation, La Cie, Ltd., Seagate Technology, LLC, and NXT-ID, Inc.  Defendants did not disclose any information on these, or any other contemplated lawsuits, in making representations about damages.  Plaintiff needs discovery on these matters to determine the appropriate amount of damages.

Plaintiff requires discovery on these matters to obtain evidence that will allow Plaintiff to determine, verify, and prove the correct amount of damages owed in this case.  The "federal rules give district courts broad discretion to manage the manner in which discovery proceeds."  *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003); *see, e.g., Wood v. FBI*, 432 F.3d 78, 84 (2d Cir. 2005).  The "court's authority to manage discovery is designed to serve both

the interests of the parties and the public interest in the prompt and efficient disposition of cases."

*Levy v. Eisner LLP*, No. 04 CIV. 0398, 2006 U.S. Dist. LEXIS 51576, 2006 WL 2015368, at *1

(S.D.N.Y. July 12, 2006).  For the foregoing reasons, Plaintiff respectfully requests that the Court

exercise its discretion in favor of commencing damages discovery at this time.

## CONCLUSION

The evidence obtained in discovery establishes a very strong case of liability.  Further, the

estimate of damages provided by Defendants is not reliable, based on publicly available

information obtained by Plaintiff.  Plaintiff, Allan Rothstein, respectfully requests the entry of an

Order commencing discovery on the issue of damages.

Dated: December 11, 2015

<div style="margin-left:40%">

Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON, LLP
Counsel for Plaintiff
2525 Ponce de Leon Blvd., 9th Floor
Miami, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

By: /s/ Chauncey D. Cole IV
Chauncey D. Cole IV, Esq.
SDNY Bar No. CC4178
cdc@kttlaw.com

</div>

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a copy of the foregoing was delivered by ECF this 11th day
of December, 2015, to all counsel of record.

<div style="margin-left:50%">

By:     /s/ Chauncey D. Cole IV
        Chauncey D. Cole IV

</div>

## SERVICE LIST

Attorneys for Defendants

MOSES & SINGER LLP
David Lackowitz, Esq.
Jason Canales, Esq.
405 Lexington Avenue
New York, NY 10174-1299
Tel: 212-554-7800
Fax: 212-554-7700
dlackowitz@mosessinger.com
jcanales@mosessinger.com
hfiorella@mosessinger.com
managingclerks_1@mosessinger.com